UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 29 2003

Michael N. Milby
Clerk of Court

JOSE LUIS GARZA-SAENZ, )
)
v. ) CA B 03-079
)
AARON CABRERA, ACTING DIRECTOR )
INS HLG/DO, and )
PHILIP D. TUTAK, INTERIM DISTRICT )
DIRECTOR FOR INTERIOR ENFORCEMENT, )
DEPARTMENT OF HOMELAND SECURITY. )
_____)

### PETITION FOR WRIT OF HABEAS CORPUS

Petitioner JOSE LUIS GARZA-SAENZ, through the undersigned, files the instant Petition for Writ of Habeas Corpus, seeking relief from the final Order of the Board of Immigration Appeals, dated November 7, 2001, finding him ineligible for any form of relief from deportation, and ordering his removal to Mexico. (Petitioner's Exhibit A, herein incorporated by reference).

### I. JURISDICTION AND VENUE

1. Jurisdiction herein is based on 28 U.S.C. 2241, as a petition for writ of habeas corpus. *INS v. St. Cyr*, 121 S.Ct. 2271 (2001).

2. The proceedings leading to the removal Order at issue herein were conducted in Harlingen, Texas, and the offices of Respondents Cabrera and Tutak are also located in Harlingen, Texas, within the jurisdiction of this Court. This order places significant restrictions on his liberty not shared by the populace at large, within the meaning of *Jones v. Cunningham*, 371 U.S. 236,240 (1963).

### II. THE PARTIES

3. Petitioner Jose Luis Garza-Saenz is a native and citizen of Mexico, who was admitted to the United States as a lawful permanent resident on or about May 8, 1976. He resides in Hidalgo, Texas.

4. Respondents Cabrera and Tutak maintain offices in Harlingen, Texas, within the jurisdiction of this Court. They are sued in their official capacity only.

### III. THE FACTS

5. Petitioner Jose Luis Garza-Saenz is a native and citizen of Mexico, who was admitted to the United States as a lawful permanent resident on or about May 8, 1976. He has resided in Hidalgo, Texas since approximately 1954, when he was five years old. His wife and children are all native born citizens of the United States.

6. On January 8, 1997, Mr. Garza pled guilty to possession of marijuana, which offense was committed on September 9, 1996. For this offense, he was placed on probation for ten years.

7. At that time, his plea rendered him subject to possible deportation, but the law was in flux with respect to eligibility for relief. Since the offense was not considered an aggravated felony, he would have been eligible for cancellation of removal, 8 U.S.C. §1229b(a), if INS waited to initiate proceedings until after April 1, 1997. *See, Matter of L-G-*, 21 I&N Dec. 89 (BIA 1995).

8. But on January 30, 1997, INS issued an Order To Show Cause ("OSC"). Consequently, Mr. Garza's case became what was known as a "gap" case: where the immigrant would have been eligible for §212(c) relief under pre-AEDPA law, and would likewise have been eligible for cancellation of removal, under post-IRRIRA law, but who fell in the "gap" between the two Acts. This created a very strong argument that to find that he was ineligible for relief from deportation would violate Equal Protection.

9. In tacit recognition of this Equal Protection violation, on or about December 9, 1998, the Attorney General decided to exercise her statutory authority under IIRIRA §309(c)(3), and to terminate deportation proceedings and initiate removal proceedings in cases

such as that at bar. This process was known as "re-papering." (*See,* Petitioner's Exhibit B, herein incorporated by reference, a 1998 BIA decision administratively closing proceedings in the case of Teodulo Cantu-Delgadillo, to await the anticipated regulations. *See also, Cantu-Delgadillo v. Trominski,* CA B-02-114).

10. In December, 1997, while proceedings were pending, the Fifth Circuit held that, for purposes of the Sentencing Guidelines, the determination of whether a given offense was a drug trafficking offense would be made by reference to state, rather than by analogy to federal law. *U.S. v. Hinojosa-Lopez,* 130 F.3d 691 (5th Cir. 1997). On January 21, 1998, solely on the basis of that decision, the Immigration Judge concluded that Mr. Garza was ineligible for any form of relief from deportation, and ordered that he be deported to Mexico. Mr. Garza filed a timely appeal to the BIA.

11. In 1999, the Second Circuit concluded that a given statute can have different meanings in the immigration and Sentencing Guideline contexts, and that its decision in *Aguirre v. INS,* 79 F.3d 315 (2d Cir.1996), which followed *Matter of L-G-,* notwithstanding its contrary decision in the Sentencing Guideline context, *U.S. v. Polanco,* 29 F.3d 35 (2d Cir.1994), did not mean that *Polanco* had been overruled or superceded. *U.S. v. Pornes-Garcia,* 171 F.3d 142 (2nd Cir.1999). Shortly thereafter, the BIA reached the same conclusion, and held that, notwithstanding *U.S. v. Hinojosa-Lopez, supra,* it would continue to apply *Matter of L-G-* nationwide, and that convictions for simple possession of controlled substances, such as Mr. Garza's, would not be considered to be aggravated felonies, such as would disqualify LPRs from relief under IIRIRA. *Matter of K-V-D-,* Int. Dec. 3422 (BIA 1999).

12. On information and belief, Mr. Garza alleges that an unknown,

but substantial, number of similarly situated LPRs were granted cancellation of removal under the Board's decision in *K-V-D-*.

13. Before the Board applied that holding to the case at bar, the Fifth Circuit issued *U.S. v. Hernandez-Avalos*, 251 F.3d 505 (5th Cir.2001), which, in *dicta*, criticized the decision in *K-V-D-*.[1]

14. Notwithstanding *Hernandez-Avalos*, the BIA continues to apply *L-G-* and *K-V-D-* in cases arising in other judicial circuits. On information and belief, Mr. Garza alleges that even after *Hernandez-Avalos*, an unknown, but substantial, number of similarly situated LPRs received cancellation of removal, particularly those whose cases arose in the Second or Third Circuits. *See, Gerbier v. Holmes*, 280 F.3d 297 (3rd Cir. 2002) (state felony conviction for the offense of simple possession of a controlled substance is **not** an aggravated felony for immigration purposes); and *U.S. v. Pornes-Garcia*, 171 F.3d 142 (2nd Cir. 1999) (statutory phrases may have different meanings for Sentencing Guidelines purposes and for immigration purposes, and, for immigration purposes, simple possession of a controlled substance is not an aggravated felony).

15. But without considering that the criticism of *K-V-D-* was

---

[1] As the Court noted therein, at 509 (emphasis added):

**[I]f we were reviewing Hernandez's removal order on direct appeal, and if the issue of statutory interpretation were properly preserved for review**, we would hold that the BIA's interpretation of section 924(c) [in *Matter of K-V-D-*] is plainly incorrect and that Hernandez was an aggravated felon.

Since these conditions were not fulfilled, the Court's criticism of *K-V-D-* can only be construed as *dicta*. The Court also utilized a "fundamental unfairness" standard of review, *id.* at 508, further demonstrating that *Matter of K-V-D-* was not before the Court.

*dicta*, and that it continues to apply *L-G-* and *K-V-D-* in cases arising in other judicial circuits, on November 7, 2001, the Board dismissed Mr. Garza's appeal.

16. Given his lengthy residence in the United States, commencing at an early age, his strong family ties, employment history, and otherwise clean record, it is highly likely that, had Petitioner been able to apply for relief from deportation, on the merits, it would have been granted, and proceedings terminated.

## IV.   THE CAUSES OF ACTION

Petitioner asserts that the deprivation of liberty complained of herein violates the laws and Constitution of the United States, as well as international law and treaty obligations with his native country of Mexico, which claims are cognizable in habeas corpus under 28 U.S.C. §2241.

### 1.   STATUTORY CONSTRUCTION
### AGGRAVATED FELONY

Mr. Garza first urges that the BIA erred as a matter of law in concluding that *Hernandez-Avalos, supra*, controls the issue of whether simple possession constitutes an aggravated felony. The language therein disapproving of *Matter of K-V-D-* was clearly *dicta*, and the Board should not have applied it herein. To the contrary, Mr. Garza asserts that *K-V-D-* was correctly decided, and that the BIA erred in not applying said decision herein.

### 2.   EQUAL PROTECTION
### a.   DIFFERING RESULTS IN DIFFERENT JURISDICTIONS

Mr. Garza also asserts that, given the national character of immigration law, it violates Equal Protection for the result of hiscase to depend solely on the federal jurisdiction in which it arose, such that, had he been placed in removal proceedings within

the Ninth, rather than the Fifth Circuit, he would not be subject to removal at all, and that, had he been placed in such proceedings in the Second or Third Circuit, he would have been held to qualify for cancellation of removal, which relief, he urges, he would have earned in the exercise of discretion.

### b. DIFFERING RESULTS BASED ON TIMING OF THE PROCEEDINGS

If proceedings had been initiated after April 1, 1997, Mr. Garza would have been eligible for for cancellation of removal, and would most probably have been granted that relief. It violates Equal Protection for the difference between remaining as an LPR, and being removed, and permanently barred, to be based solely on the timing of the proceedings. *See, Logan v. Zimmerman Brush*, 455 U.S. 422 (1982) (finding Due Process, and, per concurring opinion, Equal Protection, violations where statute terminated claims not receiving timely hearings).

### 3. SUBSTANTIVE DUE PROCESS

As a permanent resident, Mr. Garza has a fundamental liberty interest in being able to live and work in the United States, and in remaining here with his family. *See,* Dissenting Opinion of Board Member Rosenberg, *Salazar-Regino, supra* at 238. *See also, Landon v. Plasencia*, 459 U.S. 21,34 (1982), citing *Bridges v. Wixon*, 326 U.S. 135,154 (1945); *Moore v. City of East Cleveland*, 431 U.S. 494,499 (1977), and *Stanley v. Illinois*, 405 U.S. 645, 651 (1972):

> Plasencia's interest here is, without question, a weighty one. She stands to lose the right "to stay and live and work in this land of freedom," ... Further, she may lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual. ...

*Moore* and *Stanley* are both fundamental rights cases, involving family relationships. *Stanley* struck down a conclusive presumption, similar to that involved herein, and *Moore* simply concluded that the interest advanced by the State was insufficient to justify the particular intrusion into the family unit. As a lawful permanent

6

resident, Mr. Garza enjoys the same Due Process rights, including substantive Due Process rights, to develop and enjoy intimate family relationships in the United States.

The combination of provisions enacted by IIRIRA, 8 U.S.C. §1101(a)(48)(A), together with the repeal of §212(c) of the Act, and its replacement with 8 U.S.C. §1229b(a), which contains an absolute prohibition on granting discretionary relief to anyone convicted of an "aggravated felony," and the overly expansive definition of what constitute such "aggravated felonies" is an unconstitutional "conclusive presumption" that all LPRs convicted of any offense in that list are unworthy of being able to stay with their families in the United States, even where the State has deemed it appropriate to grant rehabilitative treatment to a first time offender. Similarly, by failing to permit any showing of countervailing equities, these provisions are unjustifiable, as they are not sufficiently narrowly tailored to meet a compelling state interest.

### 4. PROCEDURAL DUE PROCESS

The Board's decision deprives Mr. Garza of Procedural Due Process, as seen by Supreme Court cases involving "fair notice." To apply *Hernandez-Avalos* to Mr. Garza retroactively converts a disposition which, at the time he negotiated his plea bargain, permitted him to seek discretionary relief into one which mandates deportation. Although not "punishment" for a criminal offense, deportation has long been recognized as a "penalty." *See, Reno v. American-Arab Anti Discrimination Committee*, 525 U.S. 471, 497-98 (1999), Justice Ginsberg, concurring in Part I and the result:

> As this Court has long recognized, "[t]hat deportation is a penalty - at times a most serious one - cannot be doubted." *Bridges*, 326 U.S., at 154, 65 S.Ct. 1443; see also *ibid.* (Deportation places "the liberty of an individual ... at stake.... Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right

to stay and live and work in this land of freedom.")

Deportation then becomes an additional penalty, retroactively attached to the "criminal offense," not by any amendment to the statute, but by virtue of changed administrative and judicial interpretations thereof. This occurs even though, under state law, there is no conviction, and never will be one, if the Petitioner successfully completes his probation.

Therefore, §1101(a)(48)(A) retroactively makes qualitative changes in the penalty imposed, in a wholly unexpected manner. *See*, Nancy Morawetz, "Rethinking Retroactive Deportation Laws and the Due Process Clause," NYU Law Rev., Vol 73, No. 1, April 1998. *See also, Arce v. Walker*, 139 F.3d 329,333-34 (2nd Cir. 1998):

> [T]he Due Process Clause protects against restraints or conditions of confinement that "exceed[ ] the sentence in ... an unexpected manner." *Sandin*, 515 U.S. at 484, 115 S.Ct. at 2300; *see id.* at 479 n. 4, 115 S.Ct. at 2297 n. 4 (observing that proscribed conditions of confinement must be "qualitatively different from the punishment characteristically suffered by a person convicted of crime, and [have] stigmatizing consequences." (citation and internal quotation marks omitted)); *see, e.g., Vitek v. Jones*, 445 U.S. 480, 493, 100 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980) (holding that "involuntary commitment to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual"); *Washington v. Harper*, 494 U.S. 210, 221-22, 110 S.Ct. 1028, 1036-37, 108 L.Ed.2d 178 (1990) (holding that inmate has a liberty interest under the Due Process Clause to refuse the involuntary administration of psychotropic drugs).

These protections exist even though deportation is a civil penalty, rather than criminal punishment, is involved. As the Supreme Court recently held in *BMW of North America v. Gore*, 517 U.S. 559,574 (1996) (footnote 22 in original):

> Elementary notions of fairness enshrined in this Court's

8

constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose. FN22

FN22. See *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (*Ex Post Facto* Clause violated by retroactive imposition of revised sentencing guidelines that provided longer sentence for defendant's crime); *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) (retroactive application of new construction of statute violated due process); *id.*, at 350-355, 84 S.Ct., at 1701-1703 (citing cases); *Lankford v. Idaho*, 500 U.S. 110, 111 S.Ct. 1723, 114 L.Ed.2d 173 (1991) (due process violated because defendant and his counsel did not have adequate notice that judge might impose death sentence). The strict constitutional safeguards afforded to criminal defendants are not applicable to civil cases, but the basic protection against "judgments without notice" afforded by the Due Process Clause, *Shaffer v. Heitner*, 433 U.S. 186, 217, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (STEVENS, J., concurring in judgment), is implicated by civil *penalties*.

For a lawful permanent resident such as Mr. Garza, there can be no question but that deportation is a "civil penalt[y]" imposed as a result of his criminal "conviction" for possession of marijuana. It therefore violates Due Process as a retroactive application of new construction of a statute, as in *Bouie v. City of Columbia, supra*, and because it imposes a "civil penalt[y]" without prior notice, as in *Shaffer v. Heitner, supra*. And, as in *BNW of North America v. Gore, supra*, it confounds the "[e]lementary notions of fairness enshrined in this Court's constitutional jurisprudence" which "dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose." [2]

---

[2] This is very similar to, and is reinforced by, the "void for vagueness doctrine of *Jordan v. DeGeorge*, 341 U.S. 223,231

### 5. INTERNATIONAL LAW AND TREATY OBLIGATIONS

Finally, Mr. Garza urges that the instant order violates international law, and treaty obligations between the United States and Mexico, his country of origin.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
(956) 421-3423 (fax)
Fed. ID. 1178
Texas Bar 03052800

**VERIFICATION**

I, Lisa S. Brodyaga, hereby certify that I am familiar with Petitioner's case and that the facts as stated with respect thereto are true and correct to the best of my knowledge and belief.

April 29, 2003

**CERTIFICATE OF SERVICE**

I, Lisa S. Brodyaga, hereby certify that a courtesy copy of the foregoing, with exhibits, was personally delivered to the office of Lisa Putnam, SAUSA, at 1701 Zoy, Harlingen, Texas, this 29th day of April, 2003.

(1951) (statute relating to deportation would be tested under "void for vagueness" doctrine, notwithstanding that statute was not criminal statute, in view of grave nature of deportation).

```
            UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF TEXAS
                 BROWNSVILLE DIVISION


JOSE LUIS GARZA-SAENZ,                   )
                                         )
v.                                       )    CA
                                         )
AARON CABRERA, ACTING DIRECTOR           )
   INS HLG/DO, and                       )
PHILIP D. TUTAK, INTERIM DISTRICT        )
   DIRECTOR FOR INTERIOR ENFORCEMENT,    )
   DEPARTMENT OF HOMELAND SECURITY.      )
                                         )
_____)
```

## EXHIBIT "A" IN SUPPORT OF

## PETITION FOR WRIT OF HABEAS CORPUS

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia 22041*

| | |
|---|---|
| **Pena, L. Aron**<br>**600 S. Closner, Box 54,**<br>**Edinburg, TX 78539** | **Office of the District Counsel/HL**<br>**P.O. Box 1711**<br>**Harlingen, TX 78551** |

Name: GARZA-SAENZ, JOSE LUIS

A35-310-937

Date of this notice: 11/07/2001

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Very Truly Yours,

Lori Scialabba
Acting Chairman

Enclosure

Panel Members:
    BRENNAN, NOEL A.
    GRANT, EDWARD R.
    THOMAS, ELLEN K.

U.S. Department of Justice                                      Decision of the Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

---

File:  A35 310 937 - Harlingen                    Date:        **NOV 0 7 2001**

In re:  JOSE LUIS GARZA-SAENZ

IN DEPORTATION PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:   L. Aron Pena, Esquire

ON BEHALF OF SERVICE:      Cheri L. Jones
                           Assistant District Counsel

CHARGE:

  Order:  Sec.  241(a)(2)(B)(i), I&N Act [8 U.S.C. § 1251(a)(2)(B)(i)] -
                Convicted of controlled substance violation

APPLICATION:  Termination of proceedings


ORDER:

   PER CURIAM. In a decision dated January 21, 1998, an Immigration Judge found the respondent deportable as charged, determined that he was ineligible for any form of relief, and ordered him deported from the United States to Mexico. The respondent's appeal from that decision is dismissed.

   The respondent is a native and citizen of Mexico and a lawful permanent resident of the United States. On January 8, 1997, he was convicted for the offense of possession of marijuana, and was sentenced to confinement for a term of 10 years, suspended, and was placed on community supervision for a period of 10 years (Exh. 2). The Immigration Judge found that the respondent's conviction renders him deportable as an alien convicted of a controlled substance violation pursuant to section 241(a)(2)(B)(i) of the Immigration and Nationality Act. The Immigration Judge further determined that the respondent's conviction constitutes an aggravated felony within the meaning of section 101(a)(43)(B) of the Act, as illicit trafficking in a controlled substance, and renders him ineligible for any form of relief from deportation.

   On appeal, the respondent argues that he is not subject to deportation as charged. However, the respondent's conviction clearly constitutes a controlled substance violation which renders him deportable as charged. Furthermore, the respondent, through counsel, conceded during his hearing that he is deportable pursuant to section 241(a)(2)(B)(i) of the Act (Tr. at 13).

A35 310 937

The respondent also argues on appeal that his conviction does not constitute an aggravated felony. We disagree. The United States Court of Appeals for the Fifth Circuit, where this case arises, has determined that a state drug conviction is a "drug trafficking crime" (and thus an aggravated felony) if (1) the offense was punishable under the Controlled Substances Act and (2) it was a felony under either state or federal law. *See United States v. Hernandez-Avalos*, 251 F.3d 505 (5th Cir. 2001); s*ee also United States v. Hinojosa-Lopez*, 130 F.3d 691 (5th Cir. 1997). The respondent's possession of marijuana offense is punishable under the Controlled Substances Act (21 U.S.C. §§ 801 *et seq.*). *See* 21 U.S.C. § 844 (simple possession of a controlled substance); *see also* 21 U.S.C. § 812 (designating marijuana as a Schedule 1 controlled substance). Furthermore, the respondent's conviction documents reflect that his possession of marijuana offense is a felony of the second degree under Texas law. Therefore, under controlling Fifth Circuit precedent, the respondent's conviction for possession of marijuana constitutes an aggravated felony as "illicit trafficking in a controlled substance (as defined in section 102 of the Controlled Substances Act), including a drug trafficking crime as defined in section 924(c) of title 18, United States Code." Section 101(a)(43)(B) of the Act.

Accordingly, the respondent's appeal is dismissed.

_____
FOR THE BOARD

2

```
            UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF TEXAS
               BROWNSVILLE DIVISION


JOSE LUIS GARZA-SAENZ,              )
                                    )
v.                                  )    CA
                                    )
AARON CABRERA, ACTING DIRECTOR      )
   INS HLG/DO, and                  )
PHILIP D. TUTAK, INTERIM DISTRICT   )
   DIRECTOR FOR INTERIOR ENFORCEMENT,)
   DEPARTMENT OF HOMELAND SECURITY. )
                                    )
_____ )
```

EXHIBIT "B" IN SUPPORT OF

PETITION FOR WRIT OF HABEAS CORPUS

U.S. Department of Justice  
Executive Office for Immigration Review  

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File:    A36 422 342 - Houston         Date: DEC 29 1998

In re:   TEODULO CANTU-DELGADILLO

IN DEPORTATION PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT: Robert E. Kahn, Esquire

ON BEHALF OF SERVICE: Charlotte K. Lang  
                     Assistant District Counsel

CHARGE:

    Order   Sec.  241(a)(2)(A)(iii), I&N Act [8 U.S.C. § 1251(a)(2)(A)(iii)] -  
                  Convicted of aggravated felony

            Sec.  241(a)(2)(B)(i), I&N Act [8 U.S.C. § 1251(a)(2)(B)(i)] -  
                  Convicted of controlled substance violation

APPLICATION: Termination of proceedings

ORDER:

   PER CURIAM. In a decision dated February 25, 1997, an Immigration Judge found the respondent deportable as charged, determined that he was ineligible for any form of relief, and ordered him deported from the United States to Mexico. The respondent appealed.[1] The respondent's case will be administratively closed.

   The respondent is a native and citizen of Mexico. On July 5, 1978, he was admitted to the United States as a lawful permanent resident. On November 27, 1996, he was convicted on a plea of guilty, in the 351st District Court, Harris County, Texas for the offense of possession of marijuana. The respondent received a deferred adjudication under the Texas Code of Criminal Procedure, Article 42.12, § 5 and was placed on 10 years probation.

   We note that this Board has recently held that a deferred adjudication under article 42.12, § 5 of the Texas Code of Criminal Procedure is a conviction for immigration purposes. See Matter of Punu, Interim Decision 3364 (BIA 1998). Because the respondent's deferred adjudication under the Texas statute constitutes a conviction under immigration law, he is deportable under section 241(a)(2)(B)(i),

---

[1] The respondent's request to waive his appellate filing fee is hereby granted.

A36 422 342

as an alien convicted of a controlled substance violation.[2] Moreover, section 440(d) of the Antiterrorism Effective Death Penalty Act of 1996, Pub L. No. 104-132, 110 Stat. 1214 [AEDPA] bars certain criminal aliens from obtaining section 212(c) relief under the Immigration and Nationality Act. See 8 U.S.C. § 1182(c). However, the Attorney General plans to publish a regulation that will implement a procedure for terminating deportation proceedings for certain lawful permanent reisdents, who are precluded from relief under section 212(c) of Act, as a result of AEDPA, and placing them in removal proceedings if they would be eligible for cancellation of removal. Such a procedure is authorized by section 309(c)(2) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-626.

Pending the publication of this regulation, the Immigration and Naturalization Service has requested that the Board administratively close cases pending before it where the alien meets the criteria for this procedure. It appears from the record that the alien in the case before us meets the criteria. Accordingly, the proceedings before the Board in this case are administratively closed.

If either party to this case objects to the administrative closure of these proceedings, a written request to reinstate the proceedings may be made to the Board. The Board will take no further action in the case unless a request is received from one of the parties. The request must be submitted directly to the Board, without fee, but with certification of service on the opposing party. If properly submitted, the Board shall reinstate the proceedings.

*[signature]*
FOR THE BOARD

---

[2] We note that the respondent is not deportable under section 241(a)(2)(A)(iii), as an aggravated felon, because he was convicted only once of possession of marijuana. Under the federal statute, this offense constitutes simple possession and is punishable for only 1 year in prison. 8 U.S.C. § 844(a). Thus, he has not been convicted of a felony under federal law and therefore, does not meet the definition of an aggravated felony for immigration purposes. See Matter of L-G-, Interim Decision 3254 (BIA 1995); Matter of Davis, 20 I&N Dec. 536, 543 (BIA 1992).

2